**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Garlin MYERS, Defendant–Appellant.**

**No. 95–5316.**

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1996.

Decided Dec. 11, 1996.

Gary Humble, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Chattanooga, TN, for Plaintiff-Appellee.

Jerry Sanford Sloan (argued and briefed), Chattanooga, TN, for Defendant-Appellant.

Before MILBURN and SUHRHEINRICH, Circuit Judges; ROSEN, District Judge.*

ROSEN, District Judge.

Defendant/Appellant Garlin Myers appeals his conviction on charges of conspiracy to possess with intent to distribute cocaine and using and carrying firearms during and in relation to a drug trafficking offense. For the following reasons, we affirm.

## I. *INTRODUCTION*

Defendant Garlin Myers was charged along with a co-defendant, Ira Reed, in two counts of a three-count indictment on May 13, 1994. Myers was charged with (1) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and (2) using and carrying firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). Myers was tried before a jury on November 22–23, 1994, and the jury found him guilty on both counts. He was sentenced on February 6, 1995 to 169 months on Count 1, and to 60 months on Count 2 (the sentence on Count 2 to run consecutively to the one imposed on Count 1).

Myers now appeals his conviction on several grounds:

(1) the District Court erred in denying his motion to suppress evidence seized from the search of his person, his car and the passengers in the car;

(2) the District Court erred in admitting Rule 404(b) evidence of other cocaine transactions he was involved in with other individuals prior to and following the incident charged in the indictment;

(3) the District Court erred in instructing the jury that the Rule 404(b) evidence of other drug transactions could be considered on the issue of Defendant's intent on March 28, 1993 (the date of the incident charged in the indictment);

(4) the evidence at trial was insufficient to support Defendant's conviction under both the drug trafficking and the use and carrying of firearms counts; and

(5) it was plain error for the Court to instruct the jury that Defendant could be convicted of Count 2 (the 924(c)(1) use and carrying count) under the *Pinkerton* theory of vicarious liability.

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michi-gan, sitting by designation.

## II. *FACTUAL BACKGROUND*

In the evening of March 28, 1993, Officer Phil Headden of the Chattanooga, Tennessee Police Department was patrolling the streets in his unmarked patrol car in the Poss Homes area of Chattanooga, a known high crime area. At approximately 11:00 p.m., Headden was travelling eastbound in the 100 block of 25th Street when he noticed that traffic had come to a stop. He saw a Nissan Maxima illegally parked facing in the wrong direction on the left side (westbound side) of the street, obstructing the progress of four or five cars. He observed that the car had an expired license tag.

As he sat for several minutes in his unmarked car, he observed a large number of people approach the driver's window and observed what appeared to be a couple of drug transactions or exchanges between the driver of the car and the people outside the car. Headden also saw the Defendant leave the car, go into an apartment unit, and come back.

Headden testified that when traffic moved on, he pulled in behind the Nissan and radioed for backup. He turned on his police lights, got out and approached the car. He testified that he saw "a lot of movement going on inside the vehicle ... like they were scuffling around trying to hide something." As Headden approached the car, he observed that there were four individuals in the vehicle. He recognized one of them, James Jordan, who was in the front passenger seat. Headden testified that he was familiar with Jordan's arrest record and knew that there was a warrant outstanding for his arrest. Headden also testified that he was aware that Jordan had previously assaulted police officers.

In addition to Jordan, there were three others in the car. Defendant Myers was in the driver's seat, Ira Reed was in the right rear passenger seat, and a juvenile named Waddell Ramsey was in the left rear passenger seat.

After backup arrived, Headden ordered all four occupants out of the car and patted them down for weapons. He found no weapons on their person, but did find $817 on James Jordan and $2,496 on Ira Reed. He placed James Jordan under arrest then searched the interior of the car and found two hand guns under the front passenger seat. After finding the guns, Headden placed Ira Reed and Defendant Myers under arrest then searched the trunk of the car where he found $2,700 in cash, bundled in $500 lots. No drugs were found on the person of anyone in the car or anywhere inside the vehicle.

The Nissan driven by Defendant Myers on March 28, 1993 was registered in his mother's name. The unrebutted testimony at trial, however, was that Defendant drove it every day.

At Defendant Myers' trial, in addition to Officer Headden, both Ira Reed and James Jordan testified for the Government. Also, two other individuals, Terrence Ware and Kelvin Smith testified for the Government regarding other drug transactions involving Defendant. Defendant did not testify.

James Jordan testified about his agreement with Defendant Myers to purchase cocaine.[1] Jordan stated that he had regularly purchased crack cocaine from Myers beginning in 1990 and that he and Myers entered into an agreement to make a purchase on March 28, 1993. Jordan testified that in the two or three months prior to March 28, 1993, Jordan made five or six purchases of crack from Myers, and after purchasing the crack from Defendant Myers, he acted as a "retailer" and sold it by the rock. Jordan identified Myers' supplier of cocaine as Myers' father, Gregory Myers.

According to Jordan's testimony, on March 28, 1993, the night of their arrest, Myers was taking Jordan to purchase ¼ kilo of cocaine from his father. Jordan had an agreement with Myers that Myers would take them to

---

1. Jordan testified pursuant to a plea agreement he had entered into for a charge of being a felon in possession of a firearm. He acknowledged on the stand that he was aware that he could be given a downward departure in his sentence for

any substantial cooperation he might give the Government in ongoing drug investigations. (Jordan had previously been convicted in Tennessee state court for possession of cocaine for resale.)

his father where they would purchase cocaine and "split it"; they were to "go in half and half". Myers was supposed to put in $3,000 and Jordan and Reed were, together, to put in $3,000.

Jordan admitted that one of the guns found in the car was his; that he needed the gun "in case something went wrong." He testified that Myers knew he had a gun.

Kelvin Smith also testified against Defendant Myers. He was not a co-conspirator in the alleged March 28 conspiracy. Both Smith and Defendant's father were drug suppliers. Smith testified that he was involved in selling crack cocaine with Defendant Myers from late 1992 until February 1993. He testified that he and Defendant's father "fronted" crack to Defendant who then reimbursed them after he distributed it. Smith and Defendant's father provided Defendant with one or two ounces of crack on a weekly basis over a three to four-month period. According to Smith, Defendant's assigned geographical area of distribution of crack was the Poss Homes projects.[2]

Terrence Ware also provided evidence of Defendant's drug trafficking on other occasions. According to Ware, he bought crack cocaine from Defendant nine months after the date of the offense charged in this case.

Defendant's indicted co-conspirator, Ira Reed, also testified at trial, although less definitively than the others. He testified that he knew Defendant Myers was going to pick up the drugs and that he and James Jordan were going to get some.

## III. DISCUSSION

### A. THE DISTRICT COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM THE SEARCH OF HIS PERSON, HIS CAR AND THE PASSENGERS IN THE CAR

The parties to this appeal are in agreement on the standard of review: a district court's findings of fact on a motion to suppress are reviewed under the "clearly

erroneous" standard. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). The probable cause issue, however, is reviewed *de novo*. *Id.*

"A factual finding will only be clearly erroneous when, although there is evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir.1993) (citation omitted).

As indicated above, Defendant Myers challenges as improper the searches of, and resulting seizure of property from, his person, his car, and the passengers in the car.

### 1. DEFENDANT MYERS LACKS STANDING TO CONTEST THE SEARCH OF THE OTHER PERSONS IN THE CAR OR TO CHALLENGE THE ADMISSIBILITY OF THE EVIDENCE FOUND ON THEM

As an initial matter, the Court notes that Defendant Myers lacks standing to challenge the personal search of the passengers in his car or the admissibility of the money found on them. As the Supreme Court explained in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), "Fourth Amendment rights are personal [and] may not be vicariously asserted." *Id.* at 134, 99 S.Ct. at 425. *See also, United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980) (defendants may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have been violated). Thus, when a defendant is aggrieved by an allegedly illegal search of a third party's person or property, the Fourth Amendment rights of *that* defendant have not been infringed. *Rakas, supra*, 439 U.S. at 134–35, 99 S.Ct. at 425–26.

### 2. OFFICER HEADDEN'S STOP AND SEARCH OF DEFENDANT AND HIS CAR WERE PROPER

The district court determined that, based on the totality of the circumstances, Officer Headden had a reasonable suspicion that De-

---

2. Like James Jordan and Ira Reed, both Kelvin Smith and Terrence Ware had entered guilty

pleas on other non-related drug/gun charges prior to testifying at Defendant Myers' trial.

fendant was engaged in criminal activity on March 28, 1993, and therefore properly conducted a *Terry* stop.[3] The court also concluded that the stop was further authorized and warranted by the fact that there were two clear traffic violations readily apparent, i.e., an illegally parked vehicle and an expired license tag. *See United States v. Ferguson,* 8 F.3d 385 (6th Cir.1993) (en banc), *cert. denied,* ── U.S. ──, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994).

Defendant Myers concedes that Officer Headden had a "reasonable suspicion" to conduct a *Terry* stop. He further concedes that it was proper for Officer Headden to conduct the "pat down" search of his person as well as of the other persons in the car. (It is well-settled that a police officer can conduct a stop and "pat down" search of someone who commits a traffic offense. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). *See also, Ferguson, supra.*) However, Defendant argues that once Officer Headden found no weapons or drugs on his person or on any of the passengers in the car, his further search of the vehicle was unreasonable and illegal.

Defendant is mistaken. As indicated, Officer Headden testified that upon approaching Defendant's car on the evening in question, he recognized one of the passengers, James Jordan, for whom an arrest warrant had been issued. Headden testified that he placed Jordan under arrest pursuant to that outstanding warrant.

■ It is well-settled that when an arrest is made, it is reasonable for the arresting officer to search the arrestee's person *and* the area within his immediate control. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Further, both the Supreme Court and the Sixth Circuit have held that the passenger compartment of an automobile from which an arrestee was taken is an "area within his immediate control." *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, (1981); *United States v. Mans,* 999 F.2d 966,

968–69 (6th Cir.1993); *United States v. White,* 871 F.2d 41, 44 (6th Cir.1989). Thus, there is simply no precedential support for the proposition that an officer who has arrested a suspect in an automobile may not continue his search of the area in the vehicle within that suspect's immediate control, and it is clear that, in the circumstances presented here, Officer Headden's search of the passenger compartment of the vehicle was entirely proper.

■ Having established the propriety of the search of the vehicle's passenger compartment, we next turn to the search of its trunk and the seizure of the cash found therein. In the Court's view, this search and seizure flowed reasonably and directly from the results of the search of the passenger compartment and the events surrounding the arrest. During the search of the passenger compartment, Officer Headden found two guns under the seat. As the district court found, the discovery of the guns, coupled with the substantial amount of money found on James Jordan and Ira Reed, together with Officer Headden's earlier observations of what appeared to be "transactions" or "exchanges" established sufficient probable cause for Headden to search the trunk of the car.

Based on the foregoing, the district court's findings of fact were not clearly erroneous and its legal conclusion that the police had probable cause to search the vehicle, including the trunk, was correct. Therefore, no error was committed by the district court when it denied Defendant Myers' motion to suppress.

B. *THE DISTRICT COURT DID NOT ERR IN ADMITTING RULE 404(b) EVIDENCE OF OTHER DRUG TRANSACTIONS DEFENDANT WAS INVOLVED IN WITH OTHER INDIVIDUALS PRIOR TO AND FOLLOWING THE INCIDENT CHARGED IN THE INDICTMENT*

■ Admission of evidence under Fed.

---

**3.** In *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that a police officer's on-the-street "stop and frisk" of an individual does not violate the

Fourth Amendment if it is supported by a reasonable, articulable factual basis for the officer's belief that criminal activity may be afoot.

R.Evid. 404(b)[4] is reviewed under the following three-step standard:

First, we review for clear error the district court's factual determination that a prior act occurred. Second, we review *de novo* whether the district court made "the correct legal determination" that the evidence was admissible for a legitimate purpose. And third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial.

*United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995).

In this case, the district court admitted evidence (1) that James Jordan had been purchasing cocaine from Defendant Myers and his father over a two-year period immediately prior to the date of the charged conspiracy; (2) that Kelvin Smith had similarly been engaged in drug trafficking with Defendant over a two-year period which ended approximately one to two months before the date of the instant offense; and (3) that Terrence Ware, on one occasion approximately nine months after the instant offense, purchased cocaine from the Defendant.

Jordan's and Smith's statements concerning prior drug dealings with Defendant Myers in particular corroborated Jordan's testimony that on March 28, 1993, Defendant was taking him to his father for the purpose of obtaining cocaine to sell. Smith testified that Defendant's father supplied Defendant with cocaine on a regular basis for him to distribute in the Poss Homes area, which is where Defendant was found on March 28, 1993.

The district court explained its admission of the 404(b) other acts testimony as follows:

... I'm going to say based upon my evaluation of this case so far and the defense that's being offered that this ev-

idence does come in under 404(b) as probative of his intent. What's been represented to the Court, these are other drug deals that the defendant has done in the same geographical area, the Poss Homes area, as was allegedly conducted on the evening of March 28th.

And the government has to show that the defendant knowingly and voluntarily joined a drug conspiracy. For the same reasons that I mentioned a little while ago, and I cited the case of *United States v. Ismail*, 756 F.2d 1253, the government has to show a scheme to deal drugs in the face of the defendant's contention that he was doing something legitimate on that night....

... Of course, subsequent acts are admissible under 404(b) under the same circumstances as prior acts. There are a number of cases that so hold. Among these is a 1st Circuit case *U.S. v. Perez*, 849 F.2d 1, and many others. So, anyway that's the Court's ruling. And I will give a special instruction.

[TR. at 116–17.]

The district court then gave limiting instructions regarding the 404(b) testimony four times during trial—at the close of the direct examination of James Jordan; at the close of the direct examination of Kelvin Smith; at the close of the direct examination of Terrence Ware; and in the Jury Instructions. In each instance, the court instructed the jury:

Ladies and gentlemen, you have heard evidence that on occasions other than that alleged in the indictment in this case that the defendant was engaged in drug dealing. You may not consider this evidence to prove the proposition that because the defendant may have done those other acts he, therefore, did the acts that he is on trial here for.

You may consider those other acts only for the purpose of determining the defen-

---

4. Fed.R.Evid. 404(b) provides:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

234

dant's intent, if any, with respect to the acts which are the subject of the charges in this case. Remember the defendant is on trial here only for the acts which are alleged in the indictment and not for any other act. He should not be convicted unless you find that the government has proved beyond a reasonable doubt that the defendant has knowingly committed the acts charged in the indictment in this case....

[TR. 46, 81, 122–23, 239.]

We have held that Rule 404(b) is a rule of inclusion, not exclusion, *United States v. Bakke*, 942 F.2d 977, 981 (6th Cir.1991); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir.1989), *cert. denied*, 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989), and the trial judge has broad discretion in admitting evidence under this Rule. *United States v. Acosta–Cazares*, 878 F.2d 945, 948–51 (6th Cir.1989), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

We have further specifically held it proper to admit evidence of other crimes in cases to prove specific intent, *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir.1994); to prove intent to participate in a drug trafficking conspiracy, *United States v. French*, 974 F.2d 687, 694–95 (6th Cir.1992), *cert. denied*, 506 U.S. 1066, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993); to prove intent to participate in an ongoing scheme, *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir.1991); and to prove intent to engage in distribution of drugs, *United States v. Elkins*, 732 F.2d 1280, 1286 (6th Cir.1984).

■ As the district court observed, the Government in this case had to show that Defendant Myers knowingly and voluntarily joined in a conspiracy to deal in drugs. Defendant Myers' position at trial was that he was merely giving Jordan and Reed a ride on the evening of March 28, 1993, i.e., that he had no intention to engage in any drug deal and was merely an innocent victim of circum-

stance. In view of this claim, the Rule 404(b) material assumes highly probative value not only because it directly rebuts Defendant's position that he was doing something legitimate on the night in question, but it also corroborates the testimony of the other trial witnesses that what they were doing on the night of March 28 was getting drugs from Defendant Myers' father.

Defendant argues, however, that notwithstanding the probative value of the 404(b) evidence, because "so much evidence of other crimes" was admitted, undue prejudice *ipso facto* must be found. However, he has provided no authority for this proposition, nor has the Court found any support for this argument. The quantum of 404(b) evidence itself does not tip scales to prejudice.

For these reasons, this court finds no error on the part of the District Court in this case in admitting, with an "intent" limiting instruction, the evidence of other drug dealing acts engaged in by Defendant.[5]

## C. THE SUFFICIENCY OF THE EVIDENCE AT TRIAL

Defendant also argues that the evidence at trial was insufficient to support his conviction under both the drug trafficking conspiracy and the "use and carrying" of firearms counts. The standard of review on sufficiency of evidence was set forth in *United States v. Beddow*, 957 F.2d 1330 (6th Cir.1992):

Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. This court will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial. It is not necessary

5. Defendant also argues that the Court improperly instructed the jury on intent and the 404(b) evidence. He does not argue, however, that the limiting instruction given was legally incorrect. In fact, the instruction given was specifically requested by Defendant's counsel. Defendant's argument on this issue is that the Court should

not have given the limiting instruction *when* it gave it, that no limiting instruction should have been given at all until after the Defendant put on his defense case. However, Defendant did not make any objection as to the timing of the limiting instruction at any time during trial. Therefore, this issue has not been preserved for appeal.

for the evidence to exclude every reasonable hypothesis except that of guilt.

*Id.* at 1334 (citations omitted).

### 1. THE EVIDENCE WAS SUFFICIENT TO SUPPORT A CONVICTION ON THE DRUG CONSPIRACY CHARGE

 In order to prove a violation of the drug conspiracy statute, 21 U.S.C. § 846,

[T]he government must prove the existence of an agreement to violate the drug laws and that each coconspirator knew of, intended to join, and participated in the conspiracy. No formal or express agreement is necessary to establish a conspiracy under § 846. [A] tacit or mutual understanding among the parties is enough.

*United States v. Phibbs,* 999 F.2d 1053, 1063 (6th Cir.1993). The drug conspiracy statute does not require proof of any overt acts. *United States v. Shabani,* 513 U.S. 10, ——, 115 S.Ct. 382, 383, 130 L.Ed.2d 225 (1994). "[T]he criminal agreement itself is the *actus reus.*" *Id.* at ——, 115 S.Ct. at 386.

 In this case, there was clearly sufficient evidence to prove that Defendant Myers was a knowing participant in a conspiracy to buy cocaine. James Jordan testified that on the evening of March 28, 1993, he and Myers were "going to make a drug transaction" to buy "a quarter ki" of cocaine. Jordan further testified that Myers was taking Jordan and Reed to his father and that he had an agreement with Myers: "The agreement was that he [Defendant] was going to take us to [his father] and we were going to split it up ... Me and him go[ing] in half and half." Jordan also testified that he and Ira Reed were combining their assets to put up his half of the purchase price: Jordan was going to contribute $800 to the purchase price and Reed, who was also in the car that night, was going to contribute

$2,200. Defendant was to put up the other half, about $3,000.

Based on the foregoing, and viewing the evidence in a light most favorable to the Government, the evidence presented at trial was sufficient to support a drug conspiracy conviction.

### 2. SUFFICIENCY OF EVIDENCE ON THE 924(c) CHARGE AND THE COURT'S JURY INSTRUCTION ON THIS CHARGE

Defendant also challenges his conviction on the 924(c) "use or carrying" charge on insufficiency of evidence grounds.

With respect to the 924(c) charge, the court instructed the jurors that they could find Defendant guilty either if they found that he personally committed the "use or carrying" or, if they found the elements of the *Pinkerton* vicarious liability rule are satisfied (i.e., that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy and are within the reasonably foreseeable scope of the agreement).

The District Court's 924(c) instructions and Defendant's insufficiency of evidence challenge require consideration of the impact of the Supreme Court's ruling in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[6]

#### (a) "USING" A FIREARM

In *Bailey v. United States, supra,* the Supreme Court held that the word "use" in § 924(c) must be read narrowly. Rejecting the government's contention that "possession amounts to 'use' because possession enhances the defendant's confidence", the Court held that "'use' must connote more than mere possession of a firearm by a person who

---

**6.** *Bailey* was decided during the pendency of this appeal. In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328, 107 S.Ct. at 716. *See also, Powell v. Nevada,* 511

U.S. 79, —— ——, 114 S.Ct. 1280, 1283–84, 128 L.Ed.2d 1 (1994). In *Bailey,* the Supreme Court set out a new rule concerning the meaning of "use" under § 924(c)(1) which constituted a "clear break" with the past interpretation of the term. Therefore, the *Bailey* rule applies to this case which was pending on appeal when *Bailey* was decided. *United States v. Lang,* 81 F.3d 955 (10th Cir.1996).

commits a drug offense" and means more than mere "proximity and accessibility." —— U.S. at ——, 116 S.Ct. at 506. The Court held that satisfaction of the "use" prong of § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at ——, 116 S.Ct. at 505. As examples, the Court stated that

> [t]he active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use" just as the silent but obvious and forceful presence of a gun on a table can be a "use".

*Id.* at ——, 116 S.Ct. at 508.

In contrast, the Court stated that a gun cannot be said to be "used" within the meaning of § 924(c)(1) merely on the basis that its

> presence emboldens or protects its owner. . . . [T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1). Perhaps the nonactive nature of this asserted "use" is clear if a synonym is used: storage. A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession. . . . [W]here an offender conceals a gun nearby to be at the ready for an imminent confrontation . . . [s]ome might argue that the offender has "actively employed" the gun by hiding it where he can grab and use it if necessary. In our view, "use" cannot extend to encompass this action. If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not "used".

*Id.*

 Thus, under *Bailey,* it is clear that in the circumstances presented here Defendant Myers cannot be convicted of "using" a firearm. The firearms were found under the seat of the car, and therefore, he was not "actively employing" the gun. Nor was there evidence that either of the other co-conspirators (Ira Reed and James Jordan) actively employed the weapons so as to bring Defendant Myers within the coverage of *Pinkerton* for "using" a firearm.

### (b) *"CARRYING" A FIREARM*

#### (1) *PERSONAL PARTICIPATION OF THE DEFENDANT*

In ruling that "use" requires proof of a more active employment than having the gun concealed nearby, the *Bailey* Court left open the question of what is required to satisfy the "carrying" prong of § 924(c). The Court suggested by negative inference, however, that in some circumstances, a defendant who "puts a gun into a place to protect drugs or embolden himself", although not guilty of "using" a firearm, could be within § 924(c)'s prohibition against "carrying":

> Under the Government's reading of § 924(c)(1) [that possession amounts to "use" because possession enhances the defendant's confidence], "use" includes even the action of a defendant who puts a gun into place to protect drugs or to embolden himself. This reading [of "use"] is of such breadth that no role remains for "carry". . . . Nothing here indicates that Congress, when it provided these two terms, intended that they be understood to be redundant.

—— U.S. at ——, 116 S.Ct. at 507.

This Court addressed the "carrying" prong of § 924(c) in the aftermath of *Bailey* and held that if a firearm was "immediately available for use" by a defendant, he could be convicted of carrying a firearm under § 924(c):

> We find that in order for a defendant to be convicted of carrying a gun in violation of section 924(c)(1), the firearm must be immediately available for use—on the defendant *or within his or her reach.* Such availability takes the weapon beyond simple possession or storage.

*United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.1996) (emphasis added).

In *Riascos–Suarez,* the officer who arrested the defendant and searched the car he was driving testified that a gun was visibly placed in the driver's side of the console in the middle of the front seat (not, as in *Bailey,* locked in the trunk of the car). The Sixth Circuit found that under these circumstances Riascos–Suarez "carried" the weapon for purposes of section 924(c)(1).[7]

Similarly, in *United States v. Giraldo,* 80 F.3d 667 (2d Cir.1996), another post-*Bailey* decision, the Second Circuit determined that there was sufficient evidence to support the conviction of a defendant under the carrying prong of § 924(c). In that drug trafficking conspiracy case, one of the defendants, Andres Fermin, was the driver and apparent owner of a car in which a fully loaded gun was found hidden in the cavity under the removable change receptacle in the center console of the front seat. The appellate court found sufficient evidence to support Fermin's conviction for carrying a firearm because

> The gun was within easy reach of Fermin, and he was, at the very least, the custodian of the car. In addition, at the time of his arrest he had a billfold containing the Pontiac's registration and insurance documents. Though those documents were in the name of "Miguel Zuluaga", the address on those documents was not a residence but a mail drop, and official efforts to locate such a person had proven fruitless. It was permissible for the jury to infer from Fermin's possession of the car, its keys, and its registration and insurance documents, and from the untraceability of Zuluaga, that there was no Zuluaga, that the car belonged to Fermin, and that Fermin had full knowledge of the car's contents. Further, since the gun in the cavity was oriented for easy grasping, was fully loaded, and had a live cartridge in its

chamber, the jury was also entitled to infer that Fermin … had the gun at the ready in order to safeguard the narcotics.

*Id.* at 677.

In this case, the evidence at trial was that the guns were found under the front seat of Myers' car. They were, thus, easily accessible to Myers who was seated in the front driver's seat. Further, Jordan testified that the gun was there "in case something went wrong" and that Myers knew he had a gun. Under these circumstances, we find that the evidence presented at trial was sufficient to uphold Defendant Myers' conviction on the § 924(c) "carrying" charge under a "personal participation" theory.

### (2) *PINKERTON LIABILITY*

Even if we were not satisfied that the guns found under the front seat of the car were readily available to Myers personally, as indicated above, the Court also gave the jury a *Pinkerton* instruction. It is well settled under the doctrine of *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), that a conspirator may be convicted for offenses committed by other conspirators during and in furtherance of the conspiracy. *United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991). Under the *Pinkerton* "vicarious liability" rule, the substantive offense must be in furtherance of the conspiracy and must be reasonably foreseeable. Under this doctrine, the Sixth Circuit has held that a defendant may be convicted under § 924(c) if a co-conspirator used or carried a firearm in connection with a drug-trafficking offense. *Christian,* 942 F.2d at 367–68. *See also, United States v. Diaz,* 864 F.2d 544, 548 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989).

---

**7.** We recently clarified the holding in *Riascos–Suarez* in *United States v. Moore,* 76 F.3d 111 (6th Cir.1996). In *Moore,* we held that although "immediate availability" is a necessary element of "carrying" under section 924(c), it is not, in and of itself, sufficient; there must also be evidence of "physical transportation" of the fire-

arm. *Id.* at 113. Thus, as we explained in *Moore,* "[t]he appellant in *Riascos–Suarez* 'carried' the firearm not only because he had it within reach, but also because he physically brought it with him in the course of his drug trade." *Id.*

■ The trial evidence presented in this case satisfies the "carrying" prong of § 924(c) for co-conspirators Ira Reed and James Jordan. Jordan was sitting in the front passenger seat and one of the guns was found under his seat. He testified that he put the gun there "in case something went wrong" and that Myers knew he had the gun. Reed was sitting in the back seat and thus had ready access to at least the one he shoved under the front seat. Under these circumstances, the guns were clearly immediately available for use by, and within the reach of, co-conspirators Reed and Jordan so as to constitute "carrying" firearms for 924(c) purposes, and therefore, Myers' 924(c) conviction is also supported under a *Pinkerton* co-conspirator "vicarious liability" theory.

*Pinkerton's* viability in § 924(c) cases was not altered by *Bailey*. In fact, in *United States v. Giraldo, supra,* the Second Circuit expressly noted the continued viability of the doctrine.

As indicated, in that case, the *Giraldo* court found sufficient evidence that one of the defendants, Andres Fermin, "carried" a firearm in connection with a drug trafficking conspiracy offense by virtue of his accessibility to the gun in the center console and his apparent ownership and possession of the keys to the car. There were, however, two other defendants who were passengers in Fermin's car. The court found that with respect to these two other defendants, there was insufficient evidence that the guns were "readily accessible" to them or that they had knowledge that the guns were hidden in the front seat console.[8] The court only found Fermin guilty of the § 924(c) charge *because no Pinkerton instruction was given.* 80 F.3d at 676 ("Because the jury in the present case was not given a *Pinkerton* instruction, the application of [the post-*Bailey* use and carrying principles] produces different results for Giraldo and Tellez, on the one hand, and Fermin, on the other." *Id.*)

Defendant Myers does not dispute that the *Pinkerton* rule is alive and well in this circuit; however, he contends that the instruction given in the context of this case "seems to be plain error and fundamentally unfair". He claims that the court erred in not restating the substantive elements of § 924(c) when he gave the *Pinkerton* charge. The district court, however, did, in detail, state the elements of § 924(c) before giving the *Pinkerton* instruction and told the jury after giving the *Pinkerton* charge that to find Defendant Myers guilty under this theory they had to find that "one or more of the other members committed the crime alleged in Count 2."

■ It is axiomatic that jury instructions are to be reviewed "as a whole". *United States v. Buckley,* 934 F.2d 84, 87 (6th Cir. 1991). Viewing the *Pinkerton* liability instructions given by the district court in this case in the context of the surrounding instructions, a reasonable juror would understand the *Pinkerton* charge to mean that the defendant could not be convicted under a vicarious liability theory unless all of the elements of § 924(c), i.e., "the crime alleged in Count 2", had been proved. Thus, we find no error in the district court's *Pinkerton* charge.[9]

### CONCLUSION

For all of the foregoing reasons, we AFFIRM the conviction of Defendant Myers on both the drug trafficking conspiracy and the § 924(c) counts.

---

8. The court found that with respect to Jose Tellez who was in the back seat of the car, the gun hidden in the console was not readily accessible. As for the other defendant, Gilberto Giraldo, who was in the front passenger seat, although the court found that gun in the center console was accessible to him, there was insufficient evidence that he knew the gun was there.

9. It is also important to note that defense counsel did not object to this instruction at trial. Therefore, the instruction is reviewed under the "plain error" standard. *United States v. Thomas,* 11 F.3d 620, 629 (6th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994). In order to constitute "plain error", the defendant must show that there was an obvious error, prejudicially affecting the outcome of the trial. *Id.* at 629. Even then, the court of appeals should reverse only where the result is a miscarriage of justice. *Id.* at 630. These standards are not met in this case.