**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0142n.06

No. 09-6474

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 06, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Connie Avalos, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE: MERRITT and MOORE, Circuit Judges; MAYS, District Judge.**[*]

**MERRITT, Circuit Judge.** Defendant Connie Avalos appeals her conviction after a jury

trial for conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C.

§ 846. She was sentenced to a mandatory term of life imprisonment pursuant to 21 U.S.C. §

841(b)(1)(A) due to her previous conviction for at least two prior felony drug convictions. Avalos

argues on appeal that the district court erred in allowing the government to introduce evidence of her

prior convictions. Avalos does not appeal her sentence. For the reasons that follow, we affirm.

**I.**

This appeal involves a conspiracy ring wherein methamphetamine was purchased in

California and mailed to Kentucky. Defendant Avalos became involved through her friend,

_____

[*]The Honorable Samuel H. Mays, Jr., United States District Court for the Western District
of Tennessee, sitting by designation.

codefendant Terri Kelly. Kelly regularly bought one or two ounces of methamphetamine in California and sent it to codefendants Oshel Casto and Michael Mason in Kentucky who would then wire money to Kelly in California. Kelly became concerned that her frequent receipt of money might arouse the suspicions of the Internal Revenue Service, so she asked Avalos to receive some of the payments on her behalf. When asked by Kelly, Avalos would go to WalMart and receive the wire payment using her own identification, and a confirmation number and the sender's name, both of which she would receive from Kelly. Kelly would then purchase methamphetamine in the amount Casto or Mason had ordered and send it to them after she took a small amount for her and Avalos to share. For eight months, from June 2008 to February 2009, Avalos retrieved 17 payments, each between $1,200 and $2,500, on behalf of Kelly. The total amount Avalos retrieved was $40,450.

In February 2009, a postal inspector intercepted a package of methamphetamine that Kelly had sent from California to Kentucky and arrested codefendant Casto when he came to the post office to pick it up. A grand jury returned a six-count indictment against Avalos, Kelly, Casto and Mason. Avalos was charged with one count of conspiracy to distribute and possess with intent to distribute 500 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846.

Kelly, Casto and Mason pled guilty, leaving only Avalos who chose to go to trial. Casto, Kelly and Mason testified as to the details of the conspiracy. Kelly testified that at first Avalos did not know that Kelly was using the money to buy methamphetamine. Kelly would ask Avalos to pick up the money for her in exchange for taking Avalos to the casino where the two of them would use methamphetamine together. Tr. Trans. at 14-15 (Aug. 11, 2009) (transcribed under separate cover from other trial testimony at R. 79). Kelly further testified that at some point Avalos knew that Kelly

was using the money to buy the methamphetamine they were using. Kelly also testified that Avalos knew that Kelly was sending methamphetamine to Kentucky. *Id.* at 17-22.

Avalos testified on her own behalf. She did not dispute retrieving the money, but she denied any knowledge of the conspiracy and testified that she thought the money was child support for Kelly's minor child. Tr. Trans. at 26-29, 42 (Vol. II, Aug. 12, 2009) (R. 127). Avalos received no payment for picking up the money, and she said that she did it because Kelly was a friend. During examination by her own counsel, Avalos testified that she was a convicted felon and that she had used methamphetamine. *Id.* at 30. Because Avalos denied knowledge of the conspiracy, the district court ruled, over defense counsel's objection, that pursuant to Federal Rule of Evidence 404(b), the government could cross-examine Avalos about the prior convictions she referenced during her direct testimony. *Id.* at 34-36. The prior convictions consisted of three prior drug convictions, two of which involved marijuana and one of which involved methamphetamine. After the government questioned Avalos about the three prior convictions, the district court immediately gave a limiting instruction to the jury, admonishing them to "consider the evidence only as it relates to the government's claim of the defendant's intent, motive, plan, and knowledge." The district court also reminded the jury that the "defendant is on trial here only for the crime charged and not for any other acts." *Id.* at 38-39.

> In the final jury instructions before deliberation, the district court told the jury:
>
> You have heard that the defendant committed crimes other than the one charged in the indictment. If you find the defendant did those crimes, you can consider this evidence only as it relates to the government's claim on the defendant's intent, motive, plan, or knowledge. You must not consider it for any other purpose. Remember that the defendant is on trial here only for conspiring to distribute . . .

methamphetamine, not for the other acts. Do not return a guilty verdict unless the government proves the crime charged in the indictment beyond a reasonable doubt.

Tr. Trans. at 82 (Vol. II, Aug. 12, 2009) (R. 127). The jury found Avalos guilty and she was sentenced to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(4) due to her prior convictions.

## II.

The defendant asserts that the district court erred by admitting into evidence her prior drug convictions. Under Fed. Rule Evid. 404(b),[1] evidence of other crimes or bad acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Myers,* 102 F.3d 227, 233 (6th Cir.1996). Where a defendant is charged with a specific intent offense—like conspiracy to possess and distribute drugs—evidence of her prior convictions or bad acts may be admissible under Rule 404(b) for the purpose of proving such intent. *Myers*, 102 F.3d at 234. With regards to the use of prior bad acts to prove specific intent under Rule 404(b), we have stated that:

> [W]here there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).

---

[1]The text of Federal Rule of Evidence 404(b) in effect at the time of Avalos' trial in August 2009 provides, in relevant part:

> **(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

*United States v. Johnson,* 27 F.3d 1186, 1192 (6th Cir. 1994). In *Johnson*, the defendant was charged with possession with intent to distribute cocaine and the district court admitted the defendant's prior narcotics conviction pursuant to Rule 404(b) for the purpose of proving his specific intent to distribute. *Id.* Affirming the district court, *Johnson* explained that when the crime charged requires proof of specific intent, the prosecutor may use the prior bad acts to prove that intent "notwithstanding any defense the defendant might raise." *Id.* Expanding on *Johnson,* another panel of this court opined that when a defendant pleads not guilty, it triggers the government's duty to prove his specific intent beyond a reasonable doubt. *United States v. Lattner,* 385 F.3d 947, 957 (6th Cir. 2004).

Evidence of other bad acts is "probative of a material issue other than character" when (1) the evidence is offered for an admissible purpose; (2) the purpose for which the evidence is offered is material or "in issue;" and (3) the evidence is probative with regard to the purpose for which it is offered. *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002).

In the present case, Avalos was charged with and pleaded not guilty to engaging in a conspiracy to distribute methamphetamine; therefore, the government was required to prove her specific intent beyond a reasonable doubt. *See generally Myers,* 102 F.3d at 234. Knowledge and intent were at issue in the trial because Avalos testified that she did not know that the money she was retrieving for Kelly was being used to purchase drugs that were then sent to Kentucky. The defendant's past involvement with possession and distribution of marijuana and methamphetamine was material to show her knowledge that the money she retrieved for Kelly was used to facilitate drug transactions and to infer her intent to join the conspiracy—even if she did not know all the

details of its workings. The evidence was thus probative with regard to the purpose for which it was

offered.

We have long held that this kind of information is admissible to prove intent to participate

in drug conspiracies. *See, e.g., United States v. French,* 974 F.2d 687, 694-95 (6th Cir. 1992). As

a result, the district court properly admitted this evidence, especially in light of the two lengthy

limiting instructions the court gave the jury following Avalos' testimony and during the final charge.

The jury was properly instructed to consider the defendant's prior convictions only as to whether

they demonstrated an intent to participate in the conspiracy at issue here. *Myers*, 102 F.3d at 233

(finding no error in admitting prior bad acts evidence when accompanied by a limiting instruction

as to purpose of the evidence and noting with approval the district court's repeated instructions to

the jury on consideration of this type of evidence).

Avalos argues at length in her brief that introduction of her prior convictions was barred by

Federal Rule of Evidence 609.[2] As described above, her prior convictions were properly admitted

---

[2]The text of Federal Rule of Evidence 609 in effect at the time of Avalos' trial in August 2009 provides, in relevant part:

**Rule 609. Impeachment by Evidence of Conviction of Crime**
**(a) General rule.**--For the purpose of attacking the character for truthfulness of a witness.
     (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
     (2) evidence that any witness has been convicted of a crime that readily can be determined to have been a crime of dishonesty or false statement shall be admitted regardless of the punishment.

under Rule 404(b), making a decision on their admissibility under Rule 609 unnecessary. *United States v. Cowan*, 174 F. App'x 307, 311 n.1 (6th Cir. 2006) ("Because the evidence was admissible under Rule 404(b), we not need decide whether it was also admissible under Rule 609.") Rule 609 is used primarily to impeach a witness and is used to include evidence of prior bad acts, not exclude it. Evidence of Avalos' prior convictions was admitted to show her knowledge of the conspiracy, not to impeach her testimony.

In any event, even if the evidence was admitted in error, any error was harmless. Avalos' own counsel first introduced evidence that she was a convicted felon and had previously used methamphetamine. The government's cross-examination of Avalos about the prior convictions only added a few details to what the jury already knew about Avalos' past. In addition, there was enough evidence presented of Avalos' knowledge of the conspiracy that the jury's exposure to the evidence of her prior convictions was unlikely to change the outcome. Kelly testified repeatedly at trial—admittedly after changing her story several times between her arrest and trial—that Avalos knew that the money was being used to purchase drugs that were then sent to Kentucky. But Avalos'

---

**(b) Time limit.**--Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence. . . .

counsel cross-examined Kelly at length about the inconsistencies in her story, so the jury was well aware of Kelly's changing story about Avalos' role.

Avalos did not appeal her life sentence, despite the extremely harsh mandatory minimum sentence of life imprisonment imposed. This case illustrates the excessive and overly inclusive nature of mandatory sentences under the federal drug laws. The panel urges the government to consider any avenues available to reduce Avalos' sentence.

For the foregoing reasons we affirm the judgment of conviction. This decision does not preclude Avalos filing a timely motion for relief under 28 U.S.C. § 2255.