Harold T. STEWART, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 3:97–0156.

United States District Court, M.D. Tennessee, Nashville Division.

June 30, 1997.

Harold T. Stewart, Leavenworth, KS, Pro Se.

William Mark Cohen, Office of the United States Atty., Nashville, TN, for Respondent.

## *MEMORANDUM*

WISEMAN, Senior District Judge.

### I. Introduction

Presently before the Court is the collateral attack pursuant to 28 U.S.C. § 2255 on the sentence imposed upon Harold T. Stewart ("Petitioner") after his conviction on conspiracy, armed bank robbery and firearms charges. Petitioner was tried before a jury[1] and found guilty on January 27, 1994 of having conspired to commit an offense against the United States in violation of 18 U.S.C. § 371, of having committed armed bank robbery in violation of 18 U.S.C. § 2113(d), and of having used or carried a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c). By a judgment and commitment order dated April 4, 1994, Petitioner was sentenced by this Court to a 130 month period of detention with three years supervised release to follow. Petitioner was also ordered to pay restitution in the amount of $2,038 and a special assessment of $150. Through counsel, Petitioner

---

1. Case number 3:93–00075.

appealed his conviction to the Sixth Circuit Court of Appeals. The judgment of the Court was thereafter affirmed in an unpublished opinion entered July 18, 1995. No. 94–5469, 61 F.3d 904 (Table), 1995 WL 424422, at ** 4 (6th Cir., July 18, 1995).

Petitioner has challenged the legality of his sentence on two grounds. First, he claims that, as merely the getaway driver in an armed bank robbery scheme, he did not "use" a firearm for purposes of 18 U.S.C. § 924(c) as this term has been interpreted by the Supreme Court in *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Second, Petitioner asserts that, in ordering him to pay restitution, the Court failed to make requisite findings on the record as to Petitioner's financial condition and ability to pay. Because these grounds for relief are entirely devoid of merit, the Court DENIES Petitioner's motion in accordance with the legal analysis set forth below.

## II. Factual History

On May 26, 1993, Michael Blackwell met with Petitioner at Petitioner's home. The previous evening, Blackwell and Petitioner had spoken by telephone about their financial straits. On the morning of May 26, robbery was discussed as a possible solution. Soon thereafter, Petitioner and Blackwell were joined by Joseph Lamont Johnson. The three then solidified their robbery plans after Johnson displayed a pistol. They decided to search for a target by driving to the Bellevue area of Metropolitan Nashville. The robbers took two cars, having convinced Samantha Dowling to accompany them. Once in Bellevue, they settled upon robbing the local branch of First Security Bank—an office that both Blackwell and Johnson had visited the day before.

Between 10:30 and 11:00 a.m., Petitioner entered the bank under the pretext of obtaining a car loan application. He soon returned to his coconspirators, reporting that there were then only five women in the bank. Just before noon, a bank teller observed Petitioner and Blackwell sitting in a car parked in a lot behind the bank. Between 12:15 and 12:30 p.m., Johnson entered the bank and announced the robbery. According to testimony presented at trial, he pointed his pistol at several people and struck one of the tellers on the side of her head with it. Blackwell, wearing a mask given to him by the Petitioner, then entered the bank and assisted Johnson in collecting $11,418.

After the robbery, Blackwell and Petitioner fled in Petitioner's car, but a bank customer who had witnessed the crime from outside the bank followed them in his own vehicle. The customer called the police from his car telephone, and Petitioner and Blackwell were soon apprehended. They were then taken back to the First Security branch where Petitioner was identified as having been in the bank that day and Blackwell the day before.

## III. Legal Analysis

### A. Statute of Limitations

A threshold issue that must be addressed in advance of the merits of the instant petition is whether it was filed within the applicable limitations period that now governs § 2255 motions. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), a one-year statute of limitations applies to motions for relief from the sentence imposed by a federal court.[2] At issue is whether this limitations period, effective April 24, 1996, Pub.L. No. 104–132, Title I, § 105, 110 Stat. 1220 (1996), applies to a § 2255 motion filed after the effective date of

---

**2.** Section 2255 now reads in relevant part:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental

action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C.A. § 2255 (1994 & Supp.1997).

the Act, incorporating an attack on a judgment of conviction entered in 1994 from which the prisoner has sought relief based upon Supreme Court authority decided in 1995.

■ Although this question has neither been raised by the parties nor settled by the Sixth Circuit Court of Appeals, the Court addresses it because failure to do so would sidestep the obligation, in the infancy of the Act's effectiveness and in light of its widespread significance, to engage in an important exercise of statutory construction. *See, e.g., United States v. Rocha,* 109 F.3d 225, 227 n. 2 (5th Cir.1997) (declining to "pretermit" the retroactivity of the new certificate of appealability requirement under 28 U.S.C. § 2253 by granting the certificate and moving to the merits of an obviously fruitless motion to vacate). It would also ignore the congressional mandate that the courts apply the Act's provisions to limit the expenditure of judicial resources on meritless, cumulative or impermissibly delayed petitions.

■ In *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set forth a two-part analysis with which to assess the retroactive effect of newly-enacted legislation. First, the reviewing court must decide if Congress has made its intentions clear by specifying the retroactive effect of the law or those cases to which it applies. 511 U.S. at 268, 114 S.Ct. at 1498. If Congress has not spoken, the courts should apply the law in force at the time of decision—that is, the new law. *Id.* at 273, 114 S.Ct. at 1501 (citing

*Bradley v. Richmond School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). If, however, application of a recently enacted rule of law would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *id.* at 280, 114 S.Ct. at 1505, the new provision or statute should not control. Simply stated, although "[a] statute does not operate 'retrospectively' merely because it is applied in a case antedating the statute's enactment," *Id.* at 269, 114 S.Ct. at 1499, retroactivity becomes a concern if a provision "attaches new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. at 1499. Whether the operation of a new statute is impermissibly retroactive is a decision left to the discretion of the courts, to be informed by the "familiar considerations of fair notice, reasonable reliance, and settled expectations...." *Id.*

In terms of an express manifestation of congressional intent, "[t]he Act does not contain clear language requiring retroactive application of provisions affecting § 2255 motions." [3] *United States v. Lopez,* 100 F.3d 113, 116 (10th Cir.1996). Accordingly, the Court must address whether application of the one year limitations period would be unduly severe or repressive in light of Petitioner's expectations. In this regard it is significant to note that the instant motion was not pending on the date of the Act's effectiveness, but rather was filed on February 10, 1997. The retroactivity issue before the Court, then, is not whether the amend-

---

**3.** The lack of clarity in setting forth the Act's retroactive effect has engendered a great deal of judicial and academic discussion that is beyond the scope of this opinion. Significantly complicating matters is the fact that Congress, in creating special procedures for the habeas petitions of capital prisoners in § 107 of the Act, expressly stated its intent that these procedures apply to cases pending both on or after the effective date of the Act. Pub.L. No. 104–132, § 107(c), 110 Stat. 1226 (1996). Congress declined, however, to include such a retroactivity provision in its amendments to the habeas statutes governing non-capital offenses.

Certain courts have used this dichotomy in stressing that, because Congress failed to address the retroactive impact of the Act's amendments to 28 U.S.C. §§ 2254 and 2255, no legislative

intent can be discerned and the courts should proceed to the second stage of *Landgraf* analysis wherein retroactivity is predicated upon considerations of basic fairness and settled legal rights. *Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996); *see also Hunter v. United States,* 101 F.3d 1565, 1570 (11th Cir.1996) (en banc) ("The fairest inference from the variety of applicability provisions throughout the [Act] is that Congress was quite capable of and willing to express its intent about prospective or retrospective application when it had such an intent."); *but see Jeffries v. Wood,* 114 F.3d 1484, 1494–97 (9th Cir.1997) (en banc) (holding that the first stage of *Landgraf* analysis is conclusive, and that *only* the Act's habeas amendments for death penalty cases may be applied retrospectively).

ments to § 2255 imposed by the Act should apply to a motion pending on the date of the Act's effectiveness, but instead whether these amendments may alter the disposition of a petition premised upon a factual and procedural predicate in place before April 24, 1 996, yet not formally presented until approximately ten months later. This case therefore falls squarely within the parameters outlined in *Landgraf.* That is, the law in force at the ·time of decision—in this instance the one year limitations period of § 2255—must control unless such application "attaches new legal consequences to events completed before [the law's] enactment." *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499.

Prior to the Act's effectiveness and under the former version of § 2255, petitioners were afforded an essentially unbounded length of time within which to contest their conviction and sentence. *Lopez,* 100 F.3d at 116. Now, a movant has one year to raise his collateral attack from the later of the date upon which his conviction becomes final, the date upon which a new constitutional privilege is recognized by the Supreme Court, or the date upon which exculpatory facts or other constitutional grounds are known or should have been known by the petitioner.[4] Literal application of § 2255's statute of limitations to the instant petition would mean that Petitioner's motion was barred as of July 18, 1996 (one year after affirmance of Petitioner's conviction by the Sixth Circuit)[5] or December 6, 1996 (one year after the issuance of *Bailey*)[6] Although retroactivity concerns do not generally preclude application of an amended statute of limitations to suits filed after its effective date, *United States v. Simmonds,* 111 F.3d 737, 745 (10th Cir.1997) (citing *Forest v. United States Postal Serv.,* 97 F.3d 137, 139–40 (6th Cir. 1996)), the Supreme Court has cautioned that "it is essential that such [new limitations] statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action...." *Texaco, Inc. v. Short,* 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791 n. 21, 70 L.Ed.2d 738 (1982).

■ Because at the time of his appeal and its disposition and also at the time of *Bailey,* Petitioner believed and expected that the Court would entertain his § 2255 motion whenever it was filed, applying § 2255's new time limitation to fore shorten the viability of his claims would constitute precisely the type of peremptory retroactivity that *Landgraf* analysis is designed to avoid. It is difficult to conceive, in other words, how application of § 2255's statute of limitations to the instant motion would not impermissibly impair legal rights possessed by Petitioner on the date of the Act's effectiveness. As stated by the Seventh Circuit, "A prisoner's decision to

4. See footnote 2.

5. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712, 93 L.Ed.2d 649 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). There is no indication in the record before the Court that a petition for writ of certiorari was filed in Petitioner's behalf after disposition of his appeal by the Sixth Circuit.

6. Whether *Bailey* has effected a change in the law of the sort envisioned by the Act's drafters has been addressed, yet not settled, by the courts. The Fourth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits have each held that *Bailey* does not announce a new rule of constitutional law, but rather serves only as an authoritative interpretation of the "use" prong of 18 U.S.C. § 924(c)(1). *In re Vial,* 115 F.3d 1192, 1195–96 (4th Cir.1997) (en banc); *Nunez v. United States,* 96 F.3d 990, 992 (7th Cir.1996); *Hohn v. United States,* 99 F.3d 892, 893 (8th Cir.1996) (per curiam); *United States v. Lorentsen,* 106 F.3d 278, 279 (9th Cir.1997); *Coleman v. United States,* 106 F.3d 339, 341 (10th Cir.1997) (per curiam); *In re Blackshire,* 98 F.3d 1293, 1294 (11th Cir. 1996) (per curiam).

The Sixth Circuit has departed from this interpretation to hold that *Bailey* is "a significant, intervening change in the law" that postdates many criminal convictions as well as the direct appeals from these convictions—thereby enabling petitioners to establish cause for not having raised "use" questions on direct· review. *Dempsey v. United States,* No. 96–3335, 103 F.3d 129 (Table), 1996 WL 683588, at ** 1 (6th Cir. Nov.22, 1996); *Russell v. United States,* No: 96–1455, 103 F.3d 130 (Table), 1996 WL 692131 (6th Cir. Dec.2, 1996). Moreover, the court of appeals has also ruled that *Bailey* is "a new interpretation of substantive criminal law" that authorizes a second or successive petition under 28 U.S.C. §§ 2255, 2253(c), and 2244(a). *Miller v. United States,* No. 95–4199, 106 F.3d 401 (Table), 1996 WL 742284, at ** 3 (6th Cir. Dec.20, 1996) (per curiam).

defer filing—perhaps while doing legal research, or while waiting for the Supreme Court to decide a case that could influence the selection of issues—is the sort of event to which [amended § 2255] would 'attach new legal consequences.'" *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (*en banc* ), *cert. granted in part*, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). Accordingly, because § 2255 movants must be afforded both notice as well as a reasonable opportunity to secure review of important legal interests, this Court holds that petitioners have one year within which to file a motion to vacate from the later of the effective date of the Act, the date upon which conviction becomes final, the date upon which a novel (and retroactive) rule of law is announced by the Supreme Court, or the date upon which other grounds for relief become or should have been known. *See Simmonds*, 111 F.3d at 746 (holding that § 2255's one year limitations period "is also a reasonable time for prisoners to bring § 2255 motions whose convictions became final before the Antiterrorism and Effective Death Penalty Act took effect"); *Lindh*, 96 F.3d at 866 ("reliance interests lead us to conclude that no collateral attack filed by April 23, 1997, may be dismissed under § 2244(d) and the parallel provision added to 28 U.S.C. § 2255 by § 105 of the 1996 Act"). In this case, then, the limitations period governing Petitioner's motion did not expire until April 23, 1997.[7] Having filed his motion February 10, 1997, Petitioner's claims are not barred by the Act.

## B. "Use" of a Firearm

■ Although the instant motion was timely filed, the Court must decline to hear it unless Petitioner establishes cause for failing to raise his claims on direct appeal and resulting prejudice if they are not considered collaterally. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir.1993). In terms of the attack upon Petitioner's conviction for having used or carried a firearm in connection with a crime of violence—18 U.S.C.

§ 924(c)(1)▩ cause exists in this matter because Petitioner's challenge relies upon a significant, intervening interpretation of the law that had not been announced by the Supreme Court until after disposition of Petitioner's appeal. *Callanan v. United States*, 881 F.2d 229, 231 (6th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

■ The existence of prejudice is a separate question, however, that Petitioner has attempted to demonstrate by asserting that *Bailey* absolves him of exposure for having used a firearm in furtherance of an armed bank robbery conspiracy. While Petitioner correctly points out that *Bailey* requires active employment of a firearm under the use prong of § 924(c)(1), —— U.S. at ——, 116 S.Ct. at 505, he is entirely mistaken in arguing that, simply because he did not himself brandish a weapon on May 26, 1993, he is relieved of liability under § 924(c). Petitioner was convicted of having used a firearm under the doctrine set forth in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), wherein it was established that a conspirator may be convicted of offenses committed by other conspirators during and in furtherance of a conspiracy. *Id.* at 646–47, 66 S.Ct. at 1183–84. Even though Petitioner did not personally use a firearm in connection with the bank robbery attempt as this term has been defined by the Supreme Court in *Bailey*, his coconspirator Johnson certainly did and Petitioner was well aware of Johnson's intentions. Petitioner apparently labors under the misconception that *Bailey* has displaced the *Pinkerton* rule in § 924(c) cases. *See United States v. Myers*, 102 F.3d 227, 238 (6th Cir.1996) ("*Pinkerton's* viability in § 924(c) cases was not altered by *Bailey*."). His citation to *Bailey* is unavailing, for Petitioner's coconspirator actively employed a firearm in a manner quite consistent with the Supreme Court's interpretation of "use" for purposes of liability under § 924(c)(1).

---

7. The effective date of the Act, April 24, 1996, is later than both the date upon which Petitioner's conviction became final, July 18, 1995, and the date, December 6, 1995, upon which *Bailey* was handed down by the Supreme Court.

## C. Restitution

■ Petitioner's second claim, that the Court improperly ordered him to pay restitution without first making requisite factual findings as to his financial condition on the record, was never raised on direct appeal (at which Petitioner was represented by counsel) and may be dismissed on this basis. Even in the absence of such default, consideration of this claim on its merits bars the relief Petitioner seeks.

Under the restitution provisions in effect at the time of Petitioner's sentencing, the Court, in determining whether to order restitution, was obligated to "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors [deemed] appropriate." 18 U.S.C. § 3664(a) (1994). While Petitioner asserts that the findings consistent with the Court's burden under § 3664(a) must be reached on the record, the Sixth Circuit has not adopted this argument. In fact, the court of appeals "has held repeatedly that the district court is not required to make findings on the defendant's financial condition." *United States v. Hall,* 71 F.3d 569, 573–74 (6th Cir.1995); *see also United States v. Padgett,* 892 F.2d 445, 449 (6th Cir.1989) ("[W]here the court has the required information before it, and the defendant is given an opportunity to challenge such information, no specific findings need be made on the record."). Here, Petitioner's financial condition was disclosed in a presentence report made available to Petitioner's counsel in advance of the sentencing hearing.[8] Petitioner declined to object to this financial information both when served with the presentence report as well as when the Court offered to hear objections before adopting the report on the day of sentencing. Having failed to raise any objection to an order of restitution when given the opportu-

nity to do so, Petitioner is estopped from presenting such claims at this juncture.

## IV. Conclusion

For the foregoing reasons, although timely filed Petitioner's motion pursuant to 28 U.S.C. § 2255 is DENIED. An order consistent with this memorandum shall enter.

---

8. As amended by § 206(a) of the Act, 18 U.S.C. § 3664(a) currently provides in relevant part that, "For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." Pub.L. No. 104–132, Title II, § 206(a), 110 Stat. 1232 (1996) (codified at 18 U.S.C.A. § 3664(a) (Supp.1997)).