**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0411n.06
Filed: June 19, 2007

**No. 06-5732**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| **v.** | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **JAMES DOTSON,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    COLE, McKEAGUE, Circuit Judges; COHN, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**  Defendant-Appellant James Dotson appeals his

conviction and sentence after a jury trial on various federal charges related to stealing and possessing

a firearm and ammunition as a felon.  The Government contended at trial that Dotson burglarized

a home, stealing various items, including blank checks, a firearm, and ammunition.  The Government

further contended that Dotson possessed the firearm and ammunition the next day when the police

arrested him and found these items in the glove box of his car.  Dotson argued that he stole only the

checks and that his co-defendant, Michael Crowl, stole the firearm and ammunition and put

them—unbeknownst to Dotson—in the glove box.  On appeal, Dotson argues that (1) the car search

was improper, and therefore the evidence found in the car should have been suppressed; (2) the

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

evidence at trial was insufficient to support a guilty verdict; and, alternatively, (3) the case should

be remanded for resentencing. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

**A.      Facts**

On the morning of April 15, 2004, Gary Marlow and his wife left their home in Clinton,

Tennessee. Marlow locked the doors behind him, leaving the home unoccupied. Marlow returned

home that afternoon and found that they had been robbed. The once-locked door leading from the

garage to the main part of the home was open. A roll-top desk in the lower-level den had its drawers

pulled out, and a box containing 200 of Marlow's blank personal checks was missing. Marlow's

SKS Yogoslav assault rifle was missing from the spare bedroom. On the couch in the upstairs living

room was an empty box of United Metallic Cartridge (UMC) .38-special ammunition. Marlow kept

two full boxes of this ammunition in the upstairs bedroom, on a shelf next to his Rossi .38-special

pistol. Marlow's DVD player and approximately 30 DVD movies were also missing. The Rossi .38-

special pistol was missing from the bedroom, along with the other box of UMC ammunition, a box

of Winchester ammunition, and a plastic bag containing ammunition. The kitchen door was kicked

in. Marlow's air pistol and four family bibles were also missing. The parties stipulated at trial that

Dotson's fingerprints were on the ammunition box left on Marlow's couch.

The next day, April 16, 2004, Joshua Gurgel was working as the Security Manager at the

Target store located in the Turkey Creek shopping plaza in Knoxville, Tennessee. Gurgel was

working with a trainee and teaching her how to catch shoplifters. Gurgel saw two males enter the

store and head directly to the cell-phone aisle, walking at a fast pace. Gurgel saw the men quickly

grab two cell phones (high-theft items) and a prepaid calling card and head to the checkout line. Gurgel and the trainee went to the security office to watch the men on video. From the security office, Gurgel observed one of the men pull out a checkbook and write a check for the cell phones. Later that day, after meeting with police, Gurgel identified Dotson as the man who wrote the check. Gurgel later identified the other man as co-defendant Michael Crowl.

Believing that the Target transaction was suspicious, Gurgel instructed the trainee to retrieve the check from the cashier to determine whether the check had been stolen or forged. Upon calling the check's issuing bank, Union Planters Bank, Gurgel learned that the check had been reported stolen. Gurgel then called the police to report the incident.

Gurgel saw that the two suspicious men, Dotson and Crowl, were still in the shopping plaza and kept watching them while the trainee waited for the police to arrive. Gurgel watched the men enter a red car and drive to the Shoe Carnival store in the plaza. Dotson was driving, and Crowl was the passenger. Gurgel got into his car and followed them. Gurgel saw both men enter the Shoe Carnival store. Crowl soon left the store and returned to his seat on the passenger side of the car.

Officer Richard Dyer arrived at Target and spoke with the trainee, who gave the officer a cell phone to speak with Gurgel. Gurgel told Officer Dyer that Gurgel was in his car following the two men, and Gurgel provided his own location in the parking lot, along with a description of his and the suspects' cars. Gurgel also told Officer Dyer that Gurgel had the two men in sight and that one of them had entered the Shoe Carnival store.

Officer Dyer went to that area of the parking lot and saw Crowl sitting in the passenger side of the car Gurgel described—a red, two-door Saturn sedan. Officer Dyer parked behind the Saturn

and approached it to talk to Crowl. Crowl agreed to step out of the car, and Officer Dyer patted him down and asked him to sit in the patrol car to answer some questions. Crowl did so, and then falsely identified himself as Jason Lee. Crowl told Officer Dyer that his friend was in the Shoe Carnival store.

Dotson soon returned to the car. Officer Dyer told Dotson that he was not under arrest, but that Officer Dyer wanted to ask him questions about an allegation of forged checks. Officer Dyer then patted down Dotson, and Dotson agreed to sit in the patrol car with Crowl. Both men were read their *Miranda* warnings, agreed to answer questions, and denied passing the stolen check at Target. At this point, Gurgel arrived on the scene and motioned to Officer Dyer that the men were the ones who had passed the check at Target.

Dotson declined to answer further questions, so Officer Dyer removed him from the car, conducted a full pat-down search, and placed him into custody. In this second pat-down search of Dotson, Officer Dyer found one crumpled Marlow check in Dotson's pants pocket. Dotson acknowledged that he owned the Saturn. Officer Dyer's partner had arrived by this time, and Officer Dyer moved Dotson from Officer Dyer's patrol car to his partner's patrol car. After both Dotson and Crowl were removed from Officer Dyer's patrol car, Officer Dyer searched under the back seat of the patrol car and found a checkbook containing Marlow's checks and a plastic identification card with Dotson's picture and the name *Gary D. Marlow*.

Officer Dyer asked Dotson for consent to search the Saturn; Dotson refused. Officer Dyer nonetheless searched the car and recovered from the glove box a loaded, Rossi-.38 special pistol imprinted with the same serial number as that on the handgun missing from Marlow's home. The

glove box also contained a UMC-ammunition box and a box containing five books of Marlow checks. No useable prints were recovered from the handgun. The parties stipulated that the prints recovered from the ammunition box were Michael Crowl's. Officer Dyer called a tow truck and had the Saturn impounded.

**B.     Procedural History**

On September 21, 2004, Dotson was charged with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); stealing a firearm, in violation of 18 U.S.C. § 924(k); and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j).

Dotson moved to suppress the evidence seized from his car on April 16, 2004. The magistrate judge recommended denying Dotson's motion, and the district court ultimately did so.

A superseding indictment was filed, charging Dotson with the following four counts:

> Count One:     stealing a firearm on April 15, 2004,
> in violation of 18 U.S.C. § 924(k);
>
> Count Two:     being a felon in possession of
> ammunition on April 15, 2004, in
> violation of 18 U.S.C. § 922(g);
>
> Count Three:   being a felon in possession of a
> firearm and ammunition on April 16,
> 2004, in violation of 18 U.S.C.
> § 922(g); and
>
> Count Four:    possessing a stolen firearm on April
> 16, 2004, in violation of 18 U.S.C.
> § 922(j).

A jury trial was held on November 8, 2005, at which Dotson testified on his own behalf. His defense was that, although he indeed stole Marlow's checks and fraudulently used them, he was innocent of the firearm and ammunition charges. According to Dotson, Crowl stole these items and, unbeknownst to Dotson, put them into the glove box of Dotson's car.

Dotson first testified that he is a convicted felon, with approximately 16 prior felony convictions, including convictions for robbery, burglary, forgery, and violations of the bad-check law. Dotson then testified that on April 15, 2004, Crowl called Dotson and asked him to pick Crowl up at a "girl's house." Dotson drove his red Saturn to this house, which he later learned was Marlow's home. Dotson stated that when he first arrived, he was met by Crowl and Dotson's step-brother, Bryan Dotson, Jr. Crowl was carrying an armload of items, including numerous DVD movies, and he dropped the items into Dotson's car through the passenger window. Dotson asked Crowl what he was doing, and Crowl stated that he and Bryan Dotson, Jr., had burglarized the house and needed to flee. Dotson refused to drive with the stolen items. Dotson further testified that Crowl began to remove the items from the car, and Dotson got out of the car to look out for the police. Dotson then asked Crowl if there were checks in the house, and Crowl said he did not know. Dotson testified that, at the time, he had a cocaine drug habit, and that he stole checks to support the habit.

Dotson testified that he entered the Marlow residence and picked up several items, but removed only a box of checks from the house. He did not take a gun or box of ammunition. He testified that Crowl and Bryan Dotson, Jr., got into the car and that Dotson did not see what items

they had taken. Dotson denied taking part in the original burglary. He acknowledged that he had committed similar burglaries in the past, but stated that in this case he stole only the checks.

Dotson testified that he drove the men to his house and gave Crowl the car. Dotson told Crowl to put the checks under the spare tire in the trunk and then to return the car after Crowl unloaded the stolen items. Dotson testified that he gave a check in the amount of $605 to Bryan Dotson, Jr., who cashed it at the bank. Crowl returned the car later that same day, and Dotson took Crowl to Dotson's mother's house, where Crowl was staying.

The next day, April 16, Crowl contacted Dotson and asked Dotson to pick him up from Dotson's mother's home. Once there, Crowl showed Dotson a pistol that Crowl kept in a duffle bag inside the closet. Dotson told Crowl that he refused to drive around with a stolen gun in his car. Crowl put the gun back inside the duffle bag. Dotson then went to speak to his mother. When he returned, Crowl was waiting outside by Dotson's car. Dotson did not see a gun or ammunition, and he believed the gun was still inside the house.

Dotson and Crowl then went to a store to get an identification card with Dotson's picture and the name *Gary D. Marlow*. The two then set out to pass the checks. Dotson retrieved the box of checks from the spare tire and placed it inside his glove box. Dotson testified that neither the firearm nor the ammunition box were present inside the glove box at that time.

Dotson testified that he and Crowl set out to the Turkey Creek Target store to buy cell phones with one of the checks. They then went to the Goody's store, but Goody's would not accept their checks. They next went to the Shoe Carnival store in the same plaza. Crowl left the store to use his

cell phone, and Dotson remained inside. When Dotson left the store, the police were outside, and Crowl was seated in the rear of the patrol car.

Dotson testified that Officer Dyer spoke with him and recovered the Marlow check from Dotson's pocket. Dotson was placed in the patrol car, and Dotson further testified that he possessed the identification card and checkbook that Officer Dyer later recovered from the patrol car. Dotson testified that he had no knowledge of the firearm and ammunition found in his car and denied stealing either item from Marlow's home. Dotson agreed that the parties had stipulated that his fingerprints were found on the emptied ammunition box on the couch at the Marlow residence. He stated that he touched several items in the house and did not know how his prints ended up on that box.

At trial, the Government contended that Dotson's version of the events was not credible and that sufficient evidence established that he burglarized Marlow's home and knowingly possessed the stolen gun and ammunition. The jury returned a guilty verdict on all counts.

Dotson was then sentenced. The district court concluded that Dotson had at least three prior convictions for violent felonies and should be considered an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e), subjecting him to a statutory mandatory minimum sentence of 15 years, with a maximum sentence of life in prison. The court calculated an advisory Guideline range of 235 to 293 months, based on an offense level of 33 and a category-VI criminal history. The court concluded that the goals of 18 U.S.C. § 3553(a) could be met by a sentence at the lowest end of the range and accordingly sentenced Dotson to 235 months' imprisonment.

Dotson timely appealed.

## II.  DISCUSSION

Dotson contends (1) that the district court improperly denied his motion to suppress; (2) that there was insufficient evidence to convict him; and (3) that, alternatively, his sentence should be reduced on remand.  As discussed below, each of these contentions lacks merit.

### A.      The Search

Dotson argues that the district court should have suppressed the evidence seized from his car as unlawfully obtained without a search warrant.  When reviewing a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo.  *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004).  The evidence must be viewed in the light most favorable to the district court's decision.  *Id.*  Factual findings are clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.  *Id.*  Moreover, when considering the denial of the motion to suppress, we may consider trial evidence in addition to the evidence admitted at the suppression hearing.  *United States v. Brown*, 66 F.3d 124, 126 (6th Cir. 1995); *United States v. Perkins*, 994 F.2d 1184, 1189–90 (6th Cir. 1993).

The Fourth Amendment protects citizens against unreasonable searches or seizures.  U.S. Const. amend. IV.  A warrantless search is presumed unreasonable "unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement."  *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999).  The Government contends that three exceptions apply here: (1) search incident to Dotson's or Crowl's arrest; (2) the automobile exception; and (3) inevitable discovery of the

evidence in a later inventory search. We conclude that the first exception applies and therefore need not discuss the remaining two.

In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court held that where a person is arrested in the person's home, the police may lawfully search the person and the area immediately surrounding him or her incident to that arrest. *Thornton v. United States*, 541 U.S. 615, 617 (2004) (discussing *Chimel*). "This rule was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence." *Id.* at 620 (citation omitted). Relying on these dual rationales, the Court, in *New York v. Belton*, 453 U.S. 454 (1981), held that when a police officer has made a lawful custodial arrest of an occupant of a car, the Fourth Amendment allows the officer to search the passenger compartment of that car as a contemporaneous incident of arrest. *Thornton*, 541 U.S. at 617.

In *Thornton*, the Court held that this rule governs "even when an officer does not make contact until the person arrested has left the vehicle." *Id.* There, before the officer had the chance to pull the driver over for license plates that did not match his car, the driver parked and exited the car. *Id.* at 618. When the officer confronted him, the driver appeared nervous and consented to a patdown, which revealed illegal drugs. *Id.* The officer cuffed the driver, informed him that he was under arrest, and placed him in the back seat of the patrol car. *Id.* The officer then searched the driver's car and found a handgun under the driver's seat. *Id.*

The district court and the Fourth Circuit upheld the search as lawful, and the Supreme Court affirmed. The Court explained that, "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the

arrest of one who is inside the vehicle." *Id.* at 621. Thus, "*Belton* allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants.'" *Id.* at 622 (citation omitted). The Court noted that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search," *id.*, and explained that these sort of searches would be permissible "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as [the] petitioner" was in *Thornton*, *id.* at 623–24.

Thus, so long as *either* Dotson (the driver) or Crowl (the passenger) was a "recent occupant" of the car when arrested, the search of the car was permissible. *See United States v. Meyers*, 102 F.3d 227, 232 (6th Cir. 1996) (affirming search of defendant's car incident to arrest of passenger). We conclude that the search was lawful as incident to Crowl's arrest. The district court was concerned that the search occurred before Crowl's arrest, but, in this context, that timing is immaterial: so long as Officer Dyer had probable cause to arrest Crowl, no formal custodial arrest was necessary before a search incident to arrest could occur. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (noting that under *Rawlings v. Kentucky*, 448 U.S. 98 (1980), "the search-incident-to-lawful-arrest rule . . . permits an officer to conduct a full search of an arrestee's person *before* he is placed under lawful custodial arrest as long as the formal arrest follows quickly on the heels of the challenged search . . . and the fruits of that search are not necessary to sustain probable cause to arrest him") (internal citation and quotation marks omitted); *see also United States v. Williams*, No. 04-6473, 170 F. App'x 399, 404 (6th Cir. 2004) (noting that, under *Rawlings*, a search of a vehicle incident to arrest may occur before the arrest). Probable cause existed to arrest

Crowl because Gurgel identified him as one of the two men who passed a stolen check inside the Target store, Crowl was kept under surveillance, and he was found in the same car he entered when leaving Target. Accordingly, the search that followed—though occurring before Crowl's arrest—was proper as incident to that lawful arrest.

**B.      Sufficiency of Evidence**

Dotson contends that the evidence at trial was insufficient to sustain his conviction for each count. Evidence is sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Government is given the benefit of all reasonable inferences drawn from the evidence, and we "refrain from independently judging the weight of the evidence." *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999). Additionally, all credibility issues must be resolved in favor of the jury's verdict. *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006).

Where, as here, a defendant is charged with being a convicted felon in possession of a firearm or ammunition, the Government must prove beyond a reasonable doubt that (1) the defendant had a prior felony conviction; (2) the defendant knowingly possessed the firearm or ammunition; and (3) the firearm or ammunition had traveled in interstate commerce. *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005). The first and third showings are not at issue; Dotson contends, however, that the evidence was insufficient to prove he knowingly possessed the firearm or ammunition at

issue. If he is correct, he would establish that there was insufficient evidence to convict him of each charge, namely (1) stealing a firearm on April 15, 2004; (2) possessing ammunition on April 15; (3) possessing a firearm and ammunition on April 16; and (4) possessing a stolen firearm on April 16.

The Government argues that the evidence sufficed to convict Dotson. The Government notes that Marlow testified that before leaving his home on April 15, 2004, he left a .38-caliber Rossi pistol and two boxes containing ammunition inside a closet in his bedroom, and that a box containing blank Union Planters Bank checks was stored in a desk. When Marlow returned home later that day, the home had been ransacked, and the box of checks along with the Rossi pistol and one box containing ammunition were missing. The other box of ammunition had been moved from its place in the bedroom closet to the living-room couch, and emptied of its ammunition. Dotson's fingerprint was found on the emptied ammunition box, and no other fingerprints were found in the home.

The Government also explains that Gurgel testified that the next day, April 16, Dotson was seen passing a stolen Marlow check at Target. Officer Dyer recovered the box containing the blank checks, the stolen Rossi .38-caliber pistol, and the box of ammunition from the glove box of Dotson's car. Crowl's fingerprint was on the ammunition box in the car, but no useable prints were obtained from the gun. Additionally, Dotson possessed Marlow's checkbook, an identification card with Marlow's name, and a crumpled blank Marlow check in his pocket. The Government contends that the "evidence adduced at the trial provided ample evidence from which a rational juror could find that [Dotson] committed the burglary, stole the firearm and ammunition from the residence and continued to possess them, maintaining them inside his vehicle, the next day." (Gov't Br. 38–39.)

Dotson counters that there was insufficient evidence for each count. As to count one (stealing the gun on April 15), count three (possessing the gun and ammunition on April 16), and count four (possessing the stolen gun on April 16), he notes that the gun was found in the glove box in front of Crowl, along with the ammunition that contained Crowl's fingerprint. Accordingly, says Doston, evidence is lacking to show that he knowingly committed these offenses. As to count two (possessing ammunition on April 15), Dotson states that finding his fingerprint on the ammunition box that was on the couch in the Marlows' home is, without more, insufficient to establish that Dotson possessed the ammunition.

Though perhaps a reasonable jury might have acquitted Dotson on at least some of the charges, it is also the case that a reasonable jury could have convicted him—accordingly, the conviction stands. Dotson testified, for example, that he had no idea that Crowl put the gun and the ammunition in the glove box. And the only useable prints from those items were Crowl's prints on the ammunition box. Apparently, however, the jury chose not to find Dotson's testimony credible. Because all credibility issues must be resolved in favor of the jury's verdict, and the undisputed evidence would enable a rational juror to convict him of the charges (i.e., that he burglarized the home and knew that the gun and ammunition were in his car), we conclude that Dotson's sufficiency challenge is without merit. *Cf. United States v. Arnold*, No. 04-5384, __ F.3d __ (6th Cir. 2007) (en banc) (concluding that witness's statements and hand gestures indicating the type of gun defendant possessed sufficed to establish possession where police, soon after, recovered a gun consistent with that description from under the passenger seat on which defendant was seated, even though defendant was not the owner of the car and the gun had no useable prints).

## C.    Dotson's Sentence

The district court concluded that Dotson had three prior convictions for violent felonies, making Dotson subject to penalties under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Dotson contends, however, that one of these prior convictions—for burglary in the Criminal Circuit Court of Morgan County, Tennessee, on October 17, 2003—is invalid. He argues that the conviction violates double-jeopardy principles because a Tennessee judge improperly set aside Dotson's guilty plea to reduced charges arising from the incident and bound the case over to the grand jury, resulting in Dotson's plea to charges including burglary.

Dotson concedes, however, that under *Custis v. United States,* 511 U.S. 485 (1994), "a defendant may not use a federal sentencing forum to review his state court convictions except a conviction in absence of counsel." (Dotson's Br. 36.) He does not suggest that he lacked counsel when these convictions were imposed and therefore states that he "has an illegal sentence that he can do nothing about." (*Id.*) Dotson suggests that the appropriate solution is to have the district court take this situation into account and resentence him to the mandatory minimum under the ACCA of 15 years. But Dotson provides no authority that the district court need consider this argument in light of *Custis*. And, in any event, Dotson made this very point to the district court, (*see* Joint Appendix 344 (stating to the district court at sentencing that this prior conviction was unconstitutional and that if the court "remains handcuffed by *Custis*," then Dotson requests that the court "use [its] newly given latitude to sentence [Dotson] to the mandatory minimum of 188 months given this issue")), and the district court ultimately sentenced Dotson to the low end of the Guideline

range.  Dotson raises no other argument to contest the reasonableness of this sentence.  Accordingly, we affirm his sentence.

## III.  CONCLUSION

The search of Dotson's car was proper, the evidence was sufficient to support Dotson's conviction, and the district court did not err in sentencing Dotson.  We therefore **AFFIRM**.