OPINION
{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Michael Williams' motion to suppress evidence and dismissed the indictment against him. For the following reasons, the judgment will be reversed, and the matter will be remanded for further proceedings. *Page 2 
 I {¶ 2} Ohio State Trooper Kyle Pohlabel was the sole witness at the suppression hearing. Pohlabel's testimony, which the trial court credited, established the following facts:
 {¶ 3} At approximately 3:00 a.m. on January 11, 2008, Michael Williams stopped his vehicle at a traffic light at the State Route 725 exit off of Interstate 675. Pohlabel stopped directly behind Williams. As they waited for the light, Pohlabel observed a person later identified as Marco Porter, Williams' front seat passenger, throw a white-tipped Black Mild cigar from the vehicle. After the light turned green, Pohlabel initiated a traffic stop so that he could cite Porter for littering.
 {¶ 4} Pohlabel approached the vehicle from the passenger side and asked Porter for identification. Williams voluntarily provided his valid driver's license, vehicle registration, and insurance card, but Porter did not have identification with him. Pohlabel brought Porter to his patrol car and placed him in the back of the cruiser while he determined Porter's identity. Porter initially gave the trooper a false name, but eventually gave correct information. Williams was left alone for approximately 10 minutes while the trooper determined Porter's identity. There was no evidence that Williams behaved in a suspicious manner during this time.
 {¶ 5} Once Porter's identification was established, Pohlabel discovered that Porter had an outstanding warrant for his arrest. Porter was placed under arrest. The trooper then returned to Williams and advised him that Porter was being arrested on a warrant. Pohlabel also informed Williams that he would be conducting a search of the passenger compartment, i.e., the interior of the vehicle, incident to Porter's arrest.
 {¶ 6} When the trooper informed Williams that he planned to search the vehicle, *Page 3 
Williams informed Pohlabel that he had two guns in the locked glove compartment of the vehicle. Pohlabel had Williams exit the vehicle and stand by the guardrail. After another cruiser arrived "within just a couple minutes" of Porter's arrest, the passenger compartment was searched, and the trooper recovered the weapons. Both weapons were loaded. Williams was subsequently charged with one count of carrying a concealed weapon, a fourth degree felony.
 {¶ 7} In March 2008, Williams moved to suppress all evidence obtained as a result of the traffic stop and all evidence obtained as a result of his subsequent statements to the officers. The trial court held a hearing on the motion.
 {¶ 8} On September 2, 2008, the trial court granted Williams' motion to suppress. Following State v. Perkins, 145 Ohio App.3d 583,2001-Ohio-1463, the court stated that an officer may search the interior of an automobile when the officer reasonably suspects that a suspect has a weapon hidden in the vehicle and the officer has determined that he or she is going to allow the individual to return to the vehicle. The trial court found that there was no evidence that Williams had made any furtive movements to suggest that he was attempting to hide anything and there was no evidence that Porter would be permitted to return to the vehicle. Thus, the trial court concluded that the trooper lacked the necessary reasonable and articulable suspicion to conduct the search and, consequently, that the trooper had violated Williams'Fourth Amendment rights. Having sustained the motion to suppress, the trial court further ordered that the indictment against Williams be dismissed and that Williams be released.
 {¶ 9} The State appeals from the trial court's judgment, raising two assignments of error. *Page 4 
 {¶ 10} The State's first assignment of error states:
 {¶ 11} "THE TRIAL COURT ERRED BY DETERMINING THAT THE FOURTH AMENDMENT PROHIBITED TROOPER POHLABLE [sic] FROM SEARCHING THE PASSENGER COMPARTMENT OF WILLIAMS' CAR AFTER THE ARREST OF WILLIAMS' PASSENGER."
 {¶ 12} In its first assignment of error, the State claims that the trial court erred in suppressing the evidence from the search of the vehicle, because the trooper was entitled to search the vehicle as a search incident to the lawful arrest of Williams' passenger, in accordance with New York v. Belton (1981), 453 U.S. 454, 101 S.Ct. 2860,69 L.Ed.2d 768, and State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483. The State asserts that the trial court erred in relying onPerkins, which did not involve a search incident to a lawful arrest. In response, Williams argues that the State is seeking to impermissibly expand Belton and Murrell to situations where the police do not suspect the driver of wrongdoing.
 {¶ 13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. When the police are engaged in an investigatory detention under Terry, a police officer may perform a protective search for weapons, including a search of the passenger compartment of an automobile, when the officer reasonably believes that the individual being detained may present a danger and the individual may gain immediate control over a weapon. Michigan v. Long (1983),463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201. Upon an individual's lawful custodial arrest, police officers are entitled to conduct a warrantless search of the person and the immediately surrounding area incident to *Page 5 
that arrest. Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034,23 L.Ed.2d 685. Where the arrestee was an occupant or recent occupant of an automobile, the search incident to the arrest may include the passenger compartment of the automobile. Belton, 453 U.S. 454.
 {¶ 14} In granting Williams' motion to suppress, the trial court relied on Perkins, in which we considered whether the officer could perform a protective search of a vehicle under Long when the officer had not determined whether the detainee, who was detained in the police cruiser, would be permitted to return to the vehicle. Perkins did not involve a search incident to a lawful custodial arrest.
 {¶ 15} Even though Williams' statement that there were guns in the locked gloved compartment was made prior to the actual search, it does not amount to consent to the search. "The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search of it under government authority, cannot be entertained." Amos v. United States (1921), 255 U.S. 313, 317,41 S.Ct. 266, 65 L.Ed 654. This was not a situation where the officer engaged in a consensual conversation with the driver, State v. Taylor (1995),106 Ohio App.3d 741, or where the driver, without any coercion, consented to the search of his vehicle while a ticket for a traffic violation was being prepared, State v. Watts, Montgomery App. No. 21982,2007-Ohio-2411. Rather, this was going to be an immediate search of the vehicle and mere acquiescence to authority does not constitute consent.Bumper v. North Carolina (1968), 391 U.S. 543, 88 S.Ct. 1788,20 L.Ed.2d 797, as cited in State v. Lane, Montgomery App. No. 21501,2006-Ohio-6830, ¶ 39.
 {¶ 16} Similarly, the search cannot be justified under the automobile exception, United *Page 6 States v. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572, since, again, the statement about weapons came after, and was in direct response to, the pronouncement by the trooper that he would be immediately searching the vehicle.
 {¶ 17} Upon review of the record, it is apparent that Trooper Pohlabel conducted the search of Williams' vehicle as a search incident to the arrest of Williams' passenger. Pohlabel testified that he informed Williams that he was conducting a search incident to Porter's arrest. He did not attempt to justify the search on any other grounds, and the facts did not support an alternate justification for the search of Williams' vehicle. Because this case involves a search incident to a lawful arrest, the trial court erred in applying Perkins. We therefore focus, as do the parties, on whether Trooper Pohlabel lawfully conducted a search incident to Porter's arrest when he searched the interior of Williams' vehicle.
 {¶ 18} Chimel held that "a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area."Belton, 453 U.S. at 457, citing Chimel. The purposes of such a search are to protect the arresting police officers from any weapons to which the arrestee may have access and to prevent the concealment or destruction of evidence. Chimel, 395 U.S. at 763.
 {¶ 19} In Belton, the United States Supreme Court concluded that the permissible scope of a search incident to a lawful custodial arrest included the passenger compartment of the vehicle in which the arrestee was riding. Finding that police officers need a straightfoward standard to guide their conduct, the Belton Court attempted to establish a bright-line, "workable" rule to govern when, in automobile cases, an item was within "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." Chimel, *Page 7 395 U.S. at 763. The Court held that, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460 (footnote omitted). The Belton Court thus upheld the search of the passenger compartment of the vehicle in which Belton was a passenger, and it permitted the search of any containers, open or closed, found within the passenger compartment.
 {¶ 20} Although the Court's holding was, ostensibly, an extension ofChimel, Belton "greatly relaxed Chimel's requirement that the search incident to an arrest be confined to the arrestee's person or the area from which he might be able to gain access to a weapon or destructible evidence." State v. Myers (1997), 119 Ohio App.3d 376, 380.
 {¶ 21} Initially, the Supreme Court of Ohio rejected Belton and applied a more stringent standard based on the Ohio Constitution.State v. Brown (1992), 63 Ohio St.3d 349. However, the supreme court has since chosen to adopt Belton, thus harmonizing the Fourth Amendment and Section 14, Article I of the Ohio Constitution regarding automobile searches incident to a lawful custodial arrest. State v. Murrell,94 Ohio St.3d 489, 2002-Ohio-1483, overruling Brown.
 {¶ 22} The Belton rule has been applied expansively. Police officers may conduct the search incident to an arrest, even after the arrestee has been handcuffed and placed in the rear of the police cruiser.Murrell, 94 Ohio St.3d at 494 (citing cases); State v. Jordan, Clark App. No. 05CA04, 2006-Ohio-1813, ¶ 32. As with non-automobile scenarios, the arrest need not precede the search, as long as the arrest "followed quickly on the heels of the * * * search" and the evidence obtained during the search was not used to support probable cause for the arrest. See *Page 8 Rawlings v. Kentucky (1980), 488 U.S. 98, 111, 100 S.Ct. 2556,65 L.Ed.2d 633; United States v. Black (C.A.6, Aug. 28, 2007), 240 Fed. Appx. 95. Belton has also been expanded to situations where the police officer does not first make contact with the arrestee until after the arrestee has left the vehicle. Thornton v. United States (2004),541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905. The Thornton Court made clear that police officers may conduct a search incident to the lawful custodial arrest of both "occupants" and "recent occupants" of an automobile. Id. at 622.
 {¶ 23} Williams asserts that the State is seeking to expandBelton and Murrell further so as to allow the search of a motor vehicle's passenger compartment when a passenger is arrested, even though the police do not suspect the driver of any wrongdoing and the circumstances that led to the passenger's arrest are unrelated to the use of the vehicle. Williams argues that we should reject this alleged expansion for two reasons: (1) the language of Belton andMurrell does not support applying the rule to an innocent owner and driver just because the police arrest a passenger for reasons unrelated to the vehicle, and (2) allowing a search of the passenger compartment under these circumstances "ignores the rule that an officer cannot detain a driver longer than necessary to complete the purpose of the stop." Williams claims that Belton should be limited "to only searches of vehicles when the driver has been arrested." Current case law does not support Williams' assertions.
 {¶ 24} Belton has been applied more broadly than Williams acknowledges. Nothing in Belton, Thornton, or Murrell limits a search of an automobile, conducted incident to a lawful arrest, to situations where the driver has been arrested. Each case refers to a search incident to the lawful custodial arrest of the "occupant," not the driver. See, also, United States v. Nichols *Page 9 
(C.A.6, 2008), 512 F.3d 789 (stating that Belton "drew a bright-line rule vis-à-vis the search of an automobile incident to the arrest of one of its occupants). Moreover, although Belton and Murrell each refer to "the occupant," we have found no cases limiting the Belton rule to situations where there is a sole occupant of the vehicle. To the contrary, Belton itself was concerned with the arrest of four occupants of a vehicle, in which Belton had been a passenger.
 {¶ 25} In addition, the search of an automobile incident to the lawful custodial arrest of an occupant is permissible regardless of whether the arrest was related to the basis for stopping the vehicle. As noted inBelton, "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Id. at 461, quoting United States v. Robinson (1973), 414 U.S. 218, 235,94 S.Ct. 467, 38 L.Ed.2d 427.
 {¶ 26} In Murrell, the defendant was stopped for speeding, but he was arrested when the officer discovered that there was an outstanding warrant for his arrest for failure to pay child support. The defendant was arrested, handcuffed, and placed in the back seat of the police car. Upon a subsequent search of the vehicle, the officer found crack cocaine and powdered cocaine. The Supreme Court of Ohio adopted and appliedBelton in this case, even though there was no basis to believe that the car contained any evidence related to the offense for which Murrell was arrested and he was arrested for reasons unrelated to the basis for the traffic stop. *Page 10 
 {¶ 27} Significantly, the United States Supreme Court has appliedBelton where the arrestee was a passenger in a vehicle. United States v.Hensley (1986), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. InHensley, the United States Supreme Court focused primarily on whether the police were authorized, under Terry, to stop and briefly detain an individual who was the subject of a "wanted flyer." However, upon concluding that the initial stop of Hensley was lawful, the Court discussed the remainder of the encounter, concluding, among other things, that the search of the vehicle incident to Hensley's passenger's arrest was lawful. The Court stated:
 {¶ 28} "When the Covington officers stopped Hensley, they were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop. The Covington officers' conduct was well within the permissible range in the context of suspects who are reported to be armed and dangerous. See Michigan v. Long, 463 U.S. 1032, 1049-1050,103 S.Ct. 3469, 3480-3481, 77 L.Ed.2d 1201 (1983); Pennsylvania v.Mimms, 434 U.S. 106, 110-111, 98 S.Ct. 330, 333-334, 54 L.Ed.2d 331
(1977) (per curiam.) Having stopped Hensley, the Covington police were entitled to seize evidence revealed in plain view in the course of the lawful stop, to arrest Hensley's passenger when evidence discovered inplain view gave probable cause to believe the passenger had committed acrime, Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502(1983) (plurality opinion), and subsequently to search the passengercompartment of the car because it was within the passenger's immediatecontrol. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860,69 L.Ed.2d 768 (1981). Finally, having discovered additional weapons in Hensley'scar during the course of a lawful search, the Covington officers hadprobable cause to arrest *Page 11 Hensley himself for possession of firearms" (Emphasis added)Hensley, 469 U.S. at 235-36.
 {¶ 29} Although not relying upon Hensley, several federal circuits have also affirmed the search of a defendant's car incident to the arrest of a passenger. E.g., United States v. Myers (C.A.6, 1996),102 F.3d 227, 232. In Myers, the Sixth Circuit expressly held that the police were entitled to search the passenger and the area within his immediate control upon the arrest of the passenger on an outstanding warrant. See, also, State v. Dotson (C.A.6, June 19, 2007), 246 Fed. Appx. 897, 903 (stating that "so long as either Dotson (the driver) or Crowl (the passenger) was a `recent occupant' of the car when arrested, the search of the car was permissible").
 {¶ 30} Finally, we do not find Murrell and Belton to be inconsistent with State v. Robinette, 80 Ohio St.3d 234, 1997-Ohio-343.Robinette held, in part:
 {¶ 31} "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." Id. at paragraph one of the syllabus.
 {¶ 32} Much like a passenger can be detained by the police for the duration of a lawful stop of the driver, State v. Strozier, 172 Ohio App.3d 780, 2007-Ohio-4575, we believe the driver may be detained for the period of time reasonably necessary for the officer to complete its investigation of a passenger. A search incident to the arrest of the passenger must be "`contemporaneous' with the arrest, occurring at or very near the time of the arrest." Murrell, *Page 12 94 Ohio St.3d at 495. Accordingly, the length of the driver's continued detention while the search incident to an arrest occurs would be minimal. Considering that the purpose of the search is to protect the officers from weapons that the arrestee may have in the vehicle and to prevent the destruction of evidence, the continued detention of the driver during this "contemporaneous" search is not unreasonable.
 {¶ 33} Although the existing case law requires us to conclude that Pohlabel conducted a lawful search of Williams' vehicle incident to the lawful custodial arrest of his passenger, we are not unsympathetic to Williams' arguments. Belton has been widely criticized and, we believe, for good reason. See, e.g., United States v. Caseres (C.A.9, 2008),533 F.3d 1064; Nichols, supra; Arizona v. Gant (2008), 216 Ariz. 1,162 P.3d 640 (Bales, J., dissenting); David M. Silk, When Bright Lines BreakDown: Limiting New York v. Belton, 136 U. Pa. L.Rev. 281, 290-91. By eliminating an individualized analysis of the "grab area,"Belton allows searches of the interior of a vehicle when there is little or no possibility that the arrestee could retrieve a weapon or evidence from the vehicle. See Nichols, 512 F.3d at 797 (noting that, "[a]lthough it certainly seems impossible that Nichols could have, in a Houdini-like fashion, extricated himself from his handcuffs and escaped the patrol car to retrieve a weapon from a locked glove box, this court has made clear that, under prevailing Supreme Court precedent, the search-incident-to-arrest authority applies even where an item `is no longer accessible to the defendant at the time of the search[, s]o long as the defendant had the item within his immediate control near the time of his arrest * * *.'").
 {¶ 34} A warrantless search incident to a lawful arrest has been a recognized exception to the warrant (or probable cause) requirement of the Fourth Amendment since appearing as *Page 13 
dictum in Weeks v. United States (1914), 232 U.S. 383, 34 S.Ct. 341,58 L.Ed. 652. Chimel fleshed out the exception with its "twin rationales" of officer safety and destruction of evidence and thus set time and location limits. Belton held that a search of the passenger compartment automatically becomes incident to an arrest because of "the generalization that articles inside the relatively narrow compass of the passenger compartment are, in fact, generally, even if not inevitably, within the `area into which an arrestee might reach in order to grab a weapon or evidentiary item.'" Id. at 460.
 {¶ 35} According to the Court, such a "bright line" was needed since "[a] highly sophisticated set of rules qualified by all sorts of ifs, ands, and buts, and requiring the drawing of subtle nuances and hairline distinctions may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be `literally impossible for application by officers in the field.' * * * [A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." (Internal citations omitted.) Belton, 453 U.S. at 458. At the same time, applying the rule to justify the search of a car of a person handcuffed and confined in a police cruiser "stretches [the doctrine] beyond its breaking point." Thornton, 541 U.S. at 625 (Scalia, J., concurring). Moreover, although the Supreme Court intended to create a bright-line test, Belton has merely spawned prolific analysis of whether the arrestee was temporally or spatially an "occupant" or "recent occupant" of the vehicle and whether the search was sufficiently contemporaneous with the arrest.
 {¶ 36} An almost procrustean bright line, which allows the arrest — on a totally unrelated warrant — of a passenger of a vehicle who had been detained for throwing a cigar butt out of a *Page 14 
window and who had not been arrested until he was secured in the back of a cruiser, to retroactively justify a search of another person's vehicle in which the defendant had been riding, turns a blind eye to theFourth Amendment's probable cause requirement and maligns a police officer's abilities to remain safe and to enforce the law while obeying the constitution.
 {¶ 37} Arizona v. Gant, supra, held that Belton, Robinson, andThornton only addressed the scope of a search incident to arrest, rather than whether such a search is permissible at all which, it held, required an examination of the totality of the circumstances. The United States Supreme Court granted review of Gant on the question: "Does theFourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" Arizona v. Gant (2008),128 S.Ct. 1443,170 L.Ed.2d 274.
 {¶ 38} Pending a ruling on this question, we are constrained to follow existing United States Supreme Court and Ohio Supreme Court precedent; based on that precedent, we believe that trial court erred in granting Williams' motion to suppress.
 {¶ 39} The first assignment of error is SUSTAINED.
 III {¶ 40} The State's second assignment of error states:
 {¶ 41} "THE COURT ERRED IN DISMISSING THE INDICTMENT."
 {¶ 42} In its second assignment of error, the State claims that the trial court erred in dismissing the indictment against Williams. In the body of the decision of September 2, granting the motion to suppress, the trial court ordered that the *Page 15 
indictment be dismissed and that Williams be released. It is unclear whether this was ever done since the clerk's docket shows that, on November 13, he was released on his own recognizance. Regardless, in light of our disposition of the State's first assignment of error, we conclude that the trial court also erred in dismissing the indictment against Williams.
 {¶ 43} The second assignment of error is SUSTAINED.
 IV {¶ 44} Having sustained both assignments of error, the trial court's judgment will be reversed and the matter will be remanded for further proceedings.
WOLFF, J., concurs.